(16 Misc. Rep. 128.)

### In re GRIFFITHS.

(Oneida County Court. February, 1896.)

1. ELECTIONS—MOTION TO STRIKE NAME FROM REGISTRY LIST—NOTICE.

A provision that notice of an order to show cause why a name should not be stricken from the list of voters should be given to certain persons other than the voter is merely surplusage, not being required by statute, and a failure to serve notice on such persons is immaterial.

2. SAME—RIGHT TO VOTE—RESIDENCE IN CHARITABLE INSTITUTION.

Const. 1895, art. 2, § 3, which provides that, "for the purpose of voting, no person shall be deemed to have gained or lost a residence * * * while kept at any * * * asylum or institution wholly or partly supported by * * * charity," is prospective only, and does not affect the right to vote of any person who acquired a residence in such institution before the constitution was adopted.

Application to strike the name of John Griffiths from the register list of voters of the Second election district in the Eleventh ward of the city of Utica, on the ground that said Griffiths was an inmate of the Home for Aged Men, supported wholly or partly by charity, and that he came to said home from some place without the election district, and therefore has not gained a residence. Denied.

James Coupe, for the motion.

H. L. Gates, opposed.

DUNMORE, J. A preliminary objection is raised by Mr. Gates that the order to show cause providing that notice should be given to Joseph Harding, Frank Drash, and M. Devereux had not been complied with, and that no notice has been given to them as required by the terms of the order. We think the provisions of the order referred to may be treated as surplusage, for the reason that the statute does not require notice to be given to any person except Mr. Griffiths; and, due notice having been given to him, the preliminary objection is overruled.

Upon the hearing, the following facts were stipulated:

"That said Griffiths came to the Home for Aged Men November 1, 1893, paid the usual application fee of $250, and became an inmate thereof, subject to its rules and regulations; that he voted thereafter at the election held in 1894; and he then claimed, and now claims, the home as his legal voting residence, and claims that he has no other legal home, and that he expects to remain at said home for the remainder of his life, and is there kept [that is, supported] as an inmate of such institution."

At the time said Griffiths came to the home in question, the provisions of the constitution relating to his right to gain a residence there were as follows (article 2, § 3):

"For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence, while employed in the service of the United States; nor while engaged in the navigation of the

waters of this state, or of the United States, or of the high seas; nor while a student of any seminary of learning; nor while kept at any almshouse, or other asylum, at public expense; 'nor while confined in any public prison."

There is no pretense that said institution is supported in whole or in part at public expense, or that said Griffiths was supported there at public expense. As said Griffiths was not kept at said institution at public expense, there is nothing in that constitutional provision prohibiting him from acquiring a residence there; and as he claims that he has taken up his residence there permanently, and expects to remain there during the rest of his life, at the expiration of one year from his entrance to the home he became a resident of this state, and a legal resident of that election district. There is no claim but that he possessed all of the other qualifications necessary to make him a legal voter. He was, then, on the 1st of November, 1894, a legal resident and a legal voter in the Second election district of the Eleventh ward, and continued to be up till the 1st of January, 1895. At that time the new constitution went into effect. The only change made in the above section was by the substitution of the words "nor while kept at any almshouse, or other asylum or institution wholly or partly supported at public expense or by charity," in place of the words "nor while kept at any almshouse, or other asylum, at public expense." The question before me is as to the effect of that amendment upon the legal status of said Griffiths as a voter in said district. If the rights of said Griffiths as a voter had not vested prior to January 1, 1895, an entirely different question would be presented; but as he had acquired a legal voting residence in that district prior to the time the new constitution took effect, and therefore had lost a residence to vote elsewhere by reason of his having gained residence in this district, should the constitution be so construed as to divest him of that vested right, and leave him without any voting residence anywhere? I think not. I do not think that was the purpose of that constitutional amendment. I do not think it was intended to change the legal status of the voting residence of any person whose right had vested prior to January 1, 1895. The application must therefore be denied.

Application denied.